ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Avant Assessment, LLC | ) ASBCA Nos. 58903, 60143 |
| | ) 60144, 60619 |
| | ) |
| Under Contract Nos. W9124N-11-C-0015 | ) |
| W9124N-11-C-0033 | ) |
| W9124N-11-C-0040 | ) |

APPEARANCES FOR THE APPELLANT:       Dirk D. Haire, Esq.
                                     Alexa Santora, Esq.
                                     Sean Milani-nia, Esq.
                                     Rachel M. Severance, Esq.
                                      Fox Rothschild LLP
                                      Washington, DC

APPEARANCES FOR THE GOVERNMENT:      Raymond M. Saunders, Esq.
                                      Army Chief Trial Attorney
                                     CPT Harry M. Parent III, JA
                                     MAJ Julie A. Glascott, JA
                                      Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

These four appeals, concerning the three contracts referenced above for the development and delivery of foreign-language test items to the Defense Language Institute (DLI) (contracts 15, 33, and 40) were consolidated for hearing. Appellant, Avant Assessment, LLC (Avant), appeals from the government's termination of contract 15, and from its denial of claims that Avant submitted under all three contracts. The appeals are governed by the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109.

FINDINGS OF FACT

*I. Contract No. W9124N-11-C-0015*

On 6 June 2011, appellant, Avant and the Army (government) entered into contract 15 for the development and delivery of 4,620 foreign-language test items to DLI (ASBCA No. 58903 (58903) R4, tab 1 at 2, 4, 8). In bidding for contract 15, Avant built into its bid price the expectation that the government would reject 30 percent of its test items (tr. 1/7, 2/15). Contract 15 incorporates by reference Federal Acquisition

Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JUN 2010), which provides, at paragraph l (in part):

> *Termination for the Government's convenience.*
> The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience.... Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination.

(58903 R4, tab 1 at 32) Section C.6.1.1 of contract 15's performance work statement, item development, provides that, for the languages covered by the contract, Avant "develop acceptable passages and items" (*id.* at 7).

The performance work statement also provides the following:

> C.6.1.2. Estimated Rejection Rate of Submitted Items
> It is probable that not all submitted items will be accepted. Historically, an estimated rejection rate for items is 30% of submitted items. Therefore, in order to produce 4,620 usable items, the Contractor typically needs to overproduce by 30% or approximately 6,000 items in order to net 4,620 items. The government will only pay for 4,620 usable/approved items.

(58903 R4, tab 1 at 8)

The government accepted 4,437 of the 7,262 test items that Avant delivered (some delivered more than once), rejecting 2,825 (*see* 58903, 60144 answer at 14, ¶ 32). On 31 October and 1 November 2012, the parties entered into Modification No. P00006, which "extend[ed] the contract at no-cost for three months (through 31 January 2013)" (58903 R4, tab 7 at 1). The modification states that "[b]oth parties will continue to work towards developing an agreeable arrangement regarding the submission of the outstanding test items during the extension" (*id.*).

2

Subsequently, the parties agreed to a new delivery schedule through May 2013 (ASBCA No. 60144 (60144) compl. at 6, ¶ 24; 58903 R4, tab 117 at 6).[1] On 6 September 2013, the government terminated contract 15 for cause because, it said, Avant "did not meet the delivery schedule" (58903 R4, tab 9 at 1-2). Avant timely appealed the termination on 23 September 2013; we docketed the appeal as ASBCA No. 58903.

On 27 November 2013, Avant submitted a certified claim to the contracting officer, requesting $1,203,812.91 for alleged constructive changes to contract 15 (58903 R4, tab 117 at 1, 29). On 29 June 2015, the contracting officer issued a final decision denying that claim (58903 R4, tab 121).[2] Avant timely appealed that decision on 27 August 2015; we docketed that appeal as ASBCA No. 60144.

*II. Contract No. W9124N-11-C-0033*

On 16 September 2011, Avant and the government entered into contract 33 for the development and delivery of 1,300 foreign-language test items to DLI (ASBCA No. 58866 (58866) R4, tab 1 at 1-8). Contract 33 includes FAR 52.212-4(l) (*id.* at 28, 32). Section C.5.2.1 of contract 33's performance work statement provides that, for the languages covered by the contract, Avant "provide acceptable reading passages and items" (*id.* at 10). Section C.3 provides that "[DLI Foreign Language Center (DLIFLC)] will provide the following documents," including a "Technical Exhibit #13" entitled "Review Criteria" (*id.* at 9). The performance work statement also provides the following:

---

[1] In its response brief, Avant states that "the Government never modified contract 15 after 31 October 2012 to bind Avant to a new delivery schedule," and represents in a table that purports to depict Avant's delivery responsibilities that "0" items were due after October 2012 (app. resp. at 10-11 & n.3). However, in its complaint, Avant alleged that "[t]he parties agreed to a new delivery schedule through May 2013" (60144 compl. at 6, ¶ 24), and a party's pleading in one case is admissible as a nonbinding evidentiary admission of the party in another case. *Shell Oil Co. v. United States*, 130 Fed. Cl. 8, 80 (2017) (citing FED. R. EVID. 801(d)(2)). Avant also stated in a 27 November 2013 claim under contract 15 to the contracting officer that "the parties agreed to a delivery schedule for the production of additional Test Items through May 2013," and that "[p]ursuant to the agreed schedule, Avant delivered an additional 480 Test Items between January 31, 2013, and May 6, 2013" (58903 R4, tab 117 at 6). In view of the foregoing, we find that sometime after 1 November 2012, the parties agreed to a schedule for the delivery of items through May 2013.

[2] The contracting officer's final decision erroneously states that the claim amount was $4,203,812.91 (58903, 60144 R4, tab 121).

3

C.5.2.2. The Contractor is required to provide high quality passages and items that adhere to the specifications and criteria defined by the government in the technical exhibit documents and during the orientation session.

C.5.2.2.1. The Government will review all passages and items submitted by the Contractor. Those that do not meet standards will be rejected. It is expected that a certain proportion of passages and/or items submitted by the Contractor will be rejected during the review process. Historically, rejection rates have varied considerably from contract to contract and throughout the period of performance of any given contract.

C.5.2.2.2. DLIFLC will work closely with the Contractor to improve the quality of items (including extensive discussion sessions focusing on specific items), but it is likely that successful completion of the contract will entail the initial development of more items than listed in the above charts, to account for loss during review.

....

C.6.10.1. See Technical Exhibit #2 for a detailed schedule. The delivery schedule is based on a historical rejection rate of 45%. At any time, the Government reserves the right to modify the delivery schedule due to higher or lower rejection rates.

(*Id.* at 11, 14)

In bidding for contract 33, Avant built into its bid price the expectation that the government would reject "[a]round 30 percent" of its test items (tr. 2/15). The government accepted 1,241 of the 2,802 test items that Avant delivered (some delivered more than once), rejecting 1,561.[3] On 26 June 2013, the government

---

[3] In its brief, Avant contends that it delivered "at least 2,802 test items" (app. br. at 14, ¶ 64). In its brief, the government does not object to that contention (*see* gov't resp. at 20-25). In its answer to Avant's complaint, the government contends that Avant delivered 2,819 items and accepted 1,241 (58866, 60143 answer at 10-11, ¶ 11). Because the government's "delivered" number is higher than Avant's, we accept Avant's number, from which we subtract 1,241 accepted items to find that the government rejected 1,561 items.

terminated the contract for cause, for allegedly failing to meet the contract's delivery schedule (58866 R4, tab 5). Avant appealed the termination in ASBCA No. 58866, which, on 28 September 2016, we sustained, converting the termination to one for the convenience of the government. *Avant Assessment, LLC*, ASBCA No. 58866, 16-1 BCA ¶ 36,511 at 177,885.

On 10 September 2013, Avant submitted a certified claim to the contracting officer, requesting $508,961.29 because, it said, the government had constructively changed the contract by "unreasonably rejecting deliverables" (58866 R4, tab 72 at 1, 17-18). On 25 October 2013, Avant submitted a revised, certified claim to the contracting officer, requesting $493,730.73 (58866 R4, tab 74 at 3-4). The contracting officer issued a final decision denying that claim on 29 June 2015 (58866 R4, tab 77). Avant timely appealed that decision on 27 August 2015; we docketed that appeal as ASBCA No. 60143.

*III. Contract No. W9124N-11-C-0040*

On 21 September 2011, Avant and the government entered into contract 40 for the development and delivery of 3,600 foreign-language test items to DLI (ASBCA No. 60619 (60619) R4, tab 1 at 1, 3-5; tr. 2/97, 100). Modification No. P00002 reduced that number to 3,150 test items (60619 R4, tab 3 at 1-3; *see* answer at 1-2, ¶ 1). Section C.6.3 of contract 40's performance work statement, provides that, for the languages covered by the contract, Avant "provide acceptable reading passages and items" (60619 R4, tab 1 at 10). The performance statement of work also provides the following:

> C.6.4.1. The Contractor is required to provide high quality passages and items that adhere to the specifications and criteria defined by the government in the technical exhibit documents and during the orientation session.
>
> C.6.4.1.1. The Government will review all passages and items submitted by the Contractor. Those that do not meet standards will be rejected. It is expected that a certain proportion of passages and/or items submitted by the Contractor will be rejected during the review process. Historically, rejection rates have varied considerably from contract to contract and throughout the period of performance of any given contract.
>
> C.6.4.1.2. DLIFLC will work closely with the Contractor to improve the quality of items (including extensive discussion sessions focusing on specific items), but it is likely that successful completion of the contract will entail

5

the initial development of more items than listed in the above charts, to account for loss during review.

C.6.4.1.3. Regardless of Government assistance to make rejected passages or items acceptable, the Contractor is still solely responsible for submitting acceptable passages and/or items in accordance with the delivery schedule.

(*Id.* at 11-12) Contract 40 provides a list of 18 "Technical Exhibits," including a document that the list refers to as "VLR Review Criteria" (*id.* at 45). That document, entitled "DLPT5 Very Low Range Constructed-Response Test Item Review Criteria," lists the following:

1. Acceptable audio quality
2. Clear rendering
3. Appropriate task
4. Protocol includes all responses
5. Natural passage
6. Clear stem
7. Self-standing passage
8. Key ideas clear
9. English is understandable
10. Orientation provides adequate context
11. Protocol reflect appropriate responses
12. Crediting instructions complete/accurate
13. No typo/errors in target language
14. Other problems

(60619 R4, tab 11 at 362; *see* app. br. at 16-17, ¶ 76; gov't resp. at 13, ¶ 139, at 20-25)

In bidding for contract 40, Avant built into its bid price the expectation that the government would reject 30 percent of its test items (tr. 2/15-16). The government accepted 3,150 of the 5,405 test items that Avant delivered, rejecting 2,255 (*see* gov't resp. br. at 25). On 28 January 2014, Avant submitted a certified claim to the contracting officer, requesting $482,030.29 because, it said, the government had "unreasonably reject[ed] deliverables" (60619 R4, tab 8 at 1, 3, 21-22). The contracting officer did not issue any final decision upon the claim.

On 8 June 2016, Avant appealed the deemed denial of the claim; we docketed that appeal as ASBCA No. 60619. In its 12 July 2016 complaint, Avant alleged that the government "rejected many compliant Test Items as a result of DLI applying unreasonable, vague, and subjective inspection and acceptance criteria" (60619 compl. at 4, ¶ 20), without identifying any of those allegedly improperly rejected test items.

6

*IV. The government's review of test items*

The government explains that it used the "review criteria" to review test items (*see* gov't resp. at 13, ¶ 139). Avant's expert in foreign-language test item development, a former DLI project manager and Avant's Vice President of Content Development, who holds a master's degree in theoretical linguistics (tr. 1/25-26, 32, 42), testified at the hearing to apparently inconsistent positions regarding the review criteria. After agreeing on direct examination that reasonable experts could disagree on what the review criteria "mean in relation to particular test items," and on how the review criteria "apply to particular test items" (tr. 1/80-83), on cross-examination Avant's expert both (1) agreed that the application of the review criteria topics was objective, and (2) said that he did not believe that there was "a way to remove the subjectivity from the process of applying those objective criteria" (tr. 1/124).

Also during the hearing, the government's foreign-language test item development expert, DLIFLC's Chief of the Test Production Division, a Doctor of Applied Linguistics who was one of the reviewers of test items that Avant delivered under contracts 15, 33, and 40 (tr. 2/95-97, 99-100), confirmed on cross-examination that "acceptance of items was based on the review criteria," and answered "Yes" to the following question regarding how the government decided whether to accept items that Avant had delivered:

> What I was asking is acceptance of a specific item is [sic] a subjective judgment made sometimes perhaps by the initial reviewer, or if it's a more complicated scenario maybe [Test Development Division 1, Test Development Division 2], multiple layers would look at it and try and come to a common agreement within [the government] as to whether to accept or reject. Is that a fair assessment of the process?

(Tr. 2/115) The government's expert also agreed that she and Avant's expert "could look at the same test item and sometimes you would be in agreement as to whether it should be accepted or rejected, and sometimes you would have different views"; "[o]ne of [the two] might say this is acceptable, and the other of you looking at the same item might say no, this should be rejected" (tr. 2/117). Finally, the government's expert agreed that "experts in this field could reasonably look at a particular item and have reasonable reasons to disagree with whether it's acceptable or not" (*id.*). The government refused Avant's request for "the official line" regarding "how the review criteria were supposed to be applied" (tr. 1/53).

On the first day of the hearing, Avant requested the admission into evidence of 17 boxes (Exhibit 7) that Avant represented contained the documentary evidence of

7

approximately 10,000 test items that it had delivered to the government under the three contracts (tr. 1/139-40, 143, 145, 148-49; *see* app. br. at 41). However, Avant conceded that "we don't have time to go through each one line by line, nor would anyone want to go through that exercise," and suggested, instead, that the documents be admitted into evidence *en masse*, *"for purposes of later review*, including a very narrow subset of those items as exhibits to the post-hearing briefing" (tr. 1/140, 144 (emphasis added)). Avant explained that "to the extent we want to rely on them in our post-hearing briefing we'd give [government counsel] adequate time and notice to review the particular items we'd be relying on and to give us his objection, if any, to those particular items" (tr. 1/140). The government objected to the admission of Exhibit 7, including because, it said, it had not had the opportunity to review the exhibit, having received a copy only the week before the hearing (tr. 1/145). The Board denied the request to admit the boxes into evidence (tr. 1/145, 148).

The government conducted a pre-performance contractor orientation session for each of the three contracts (58903 R4, tab 17; 60143 R4, tab 36; 61044 R4, tab 17). It also provided "feedback" to Avant regarding its review of every test item delivered under the three contracts, with each item identified by number (for example, "ACVL0011") (exs. 8-10, 21-24; *see* tr. 1/68-69, 148-59). At least with respect to contract 40, Avant found itself too busy to review that feedback (tr. 2/86-87).

## DECISION

*I. ASBCA No. 58903: Contract 15 (Termination for Cause)*

The government must justify the termination of a contract for cause. *See Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 764 (Fed. Cir. 1987). The government attempts to justify the termination of contract 15 for cause by pointing to Avant's alleged failure to timely deliver items in September 2011; January through April 2012; and March through May 2013 (58903 gov't br. at 13). We have found (as the government says (*id.* at 7, ¶ 20)), that the parties agreed to a new delivery schedule through May 2013. Because they did so, any failures by Avant to meet earlier delivery deadlines cannot justify contract termination, because the government had waived them. *See DeVito v. United States*, 413 F.2d 1147, 1154 (Ct. Cl. 1969) ("Where the government elects to permit a delinquent contractor to continue performance past a due date, it surrenders its alternative and inconsistent right under the Default clause to terminate."). The government says that "appellant's failure to timely deliver items in March, April, and May 2013...was not excused," and that "[a]s such, the government's termination of the contract for cause was correct," but cites nothing in support of that contention (58903 gov't br. at 13). For these reasons, the government fails to justify the termination of contract 15 for cause. Accordingly, ASBCA No. 58903 is sustained and the termination of contract 15 is converted to one for the convenience of the government.

*II. ASBCA Nos. 60143 and 60144*

In ASBCA Nos. 60143 and 60144, Avant seeks price adjustments for contracts 33 and 15, for the government's allegedly improper rejection of test items (app. br. at 38). On 28 September 2016, in ASBCA No. 58866, we converted the termination of contract 33 to one for the convenience of the government; above, we have converted the termination of contract 15 to one for the convenience of the government. Avant contends that (1) the conversion of those terminations means that Avant's recovery should be determined under FAR 52.212-4(l); (2) any compensation owed to Avant under contracts 15 and 33 "should be calculated under FAR 52.212-4(l), a matter over which this Board lacks jurisdiction";[4] and (3) "at most, this Board retains jurisdiction to declare an increase" in the prices of contracts 15 and 33 prices (app. br. at 30, 43). Avant says further that the Board "is not authorized to award damages to Avant or deny Avant damages" under those contracts 15 and 33 (*id.* at 43).

Avant also says that "[a]lthough Avant feels that engaging in a proceeding that can only operate as a precursor to yet another proceeding is wasteful, the Board left Avant with few choices other than to proceed with its case-in-chief [in ASBCA Nos. 60143 and 60144], irrespective of the fact that this proceeding could never fully and finally resolve Contract 0033 (and, most likely, Contract 0015)" (app. br. at 43). Elsewhere, Avant requests that the Board "adjust[] the price of all [the] Contracts to compensate Avant for the Government's unjustified rejection of test items and direct[] the Government to determine Avant's FAR 52.212-4(l) entitlement in a manner consistent with" a $1,203,812.91 price adjustment for contract 15 and a $1,099,414.08 price adjustment for contract 33 (*id.* at 2, 56-57). The government cites the CDA for the mere proposition that the Board has jurisdiction to decide any appeal from a final decision of a contracting officer, but does not clearly offer an opinion on whether we possess jurisdiction over the price adjustment claims in ASBCA Nos. 60143 and 60144 (gov't resp. at 26).

We reject Avant's request to direct the government "to determine entitlement under FAR 52.212-4(l) in a manner consistent with" any particular price adjustments; entitlement under the termination for convenience provisions of FAR 52.212-4(l) is not presently before us, and we do not possess jurisdiction to order such injunctive relief. *See CDM Constructors, Inc.*, ASBCA No. 59524, 15-1 BCA ¶ 36,097 at 176,238. Otherwise, we take Avant's position to mean that the conversion of the termination of contracts 15 and 33 into ones for the convenience of the government essentially moots ASBCA Nos. 60143 and 60144, *cf. Kalvar Corp. v. United States*,

---

[4] Indeed, with respect to contract 15, at the hearing Avant "move[d] to dismiss [ASBCA No.] 60143 for lack of jurisdiction" (tr. 1/12). The Board did not rule upon that motion.

9

543 F.2d 1298, 1304-06 (Ct. Cl. 1976) (constructive termination for convenience mooted breach claims), because Avant is entitled to recover under FAR 52.212-4(l), in the context of a termination for convenience settlement proposals to be presented to the contracting officer. We won't stand in the way. ASBCA Nos. 60143 and 60144 are dismissed as moot.[5]

*III.   ASBCA No. 60619*

In ASBCA No. 60619, Avant seeks $1,110,452.42 in breach damages because, it contends, the government improperly rejected test items submitted under contract 40 through the subjective application of review criteria, and that the government breached the implied duty to cooperate with Avant by failing to work closely with Avant (pursuant to section C.6.4.1.2) to clarify review standards (app. br. at 40-43). Avant also contends that "the Government has not met the Government's burden of proving that it properly rejected test items" (app. br. at 2; *see* tr. 1/18-19).

When the government rejects work as not in compliance with its specifications, the burden is upon the government to demonstrate that fact; otherwise, the contractor is entitled to an equitable adjustment. *Ensign-Bickford Aerospace & Defense Co.*, ASBCA No. 57929, 16-1 BCA ¶ 36,533 at 177,967-68, 177,971-73. However, as a first step in challenging the rejection of items for alleged noncompliance, "the contractor must take the minimal step of pointing out the specific instance or instances of alleged improper rejection." *Alliance Properties, Inc.*, ASBCA No. 25610, 84-1 BCA ¶ 17,101 at 85,124. The government contends that Avant has failed to take that step because it offered an expert opinion on only three rejected test items (gov't resp. at 30). We agree; therefore, we need not decide whether the government's review of test items was improperly subjective.

Avant delivered 5,405 test items pursuant to contract 40. The government rejected 2,255 of those. Avant does not contend that all 2,255 rejected items were improperly rejected; indeed, in its complaint it alleges only that "many" compliant contract 40 test items were rejected. Nevertheless, Avant says that the Board "must deem *all* rejected items to be improperly rejected" because, it says, the government failed to introduce "evidence of which items–if any–it deemed properly rejected" (app.

---

[5] Avant cites *Symbion Ozdil Joint Venture*, ASBCA No. 56713, 10-1 BCA ¶ 34,367 (app. br. at 30). There we determined that an appellant was entitled to a price increase as "a number that will help establish how much money" was due pursuant to FAR 52.249-2 for purposes of a convenience settlement proposal pending before a contracting officer. *Symbion*, 10-1 BCA ¶ 34,367 at 169,712. Because we take Avant's position as, in effect, a mootness argument, we decline to follow the *Symbion* approach here.

10

br. at 40-41 (emphasis in original)).[6] To the extent that Avant requests an adverse inference for a party's failure to produce available evidence, we deny that request. An adverse inference is not proper where the evidence in question is equally available to both parties. *See Day & Zimmermann Servs. v. United States*, 38 Fed. Cl. 591, 604 n.16, *dismissed*, 132 F.3d 49 (Fed. Cir. 1997) (unpublished opinion). Here, the rejected items were as available to Avant as they were to the government; indeed, Avant represented during the hearing that it possessed the test items in hard copy, and exhibit 10 identifies each test item by number. For these reasons, we will not draw an adverse inference that every test item that the government rejected was acceptable.

Although Avant insists that "it was not necessary for Avant to establish that any particular test items were improperly rejected" (app. br. at 41), it was necessary, in the first instance, that Avant identify the particular test items that it contended were improperly rejected.[7] *Alliance Properties*, 84-1 BCA ¶ 17,101 at 85,124. For example, in *Ensign-Bickford*, before reciting the rule that "[u]nless the government proves that it properly rejected [detonator lots 11-14], appellant is entitled to an equitable adjustment," the Board noted that the contractor in that appeal claimed "that the government improperly rejected lots 11-14." 16-1 BCA ¶ 36,533 at 177,967. Presumably, Avant could have similarly identified improperly rejected test items, using, at least, exhibit 10. Because Avant has not done so, it has failed to shift the burden of proof to the government. Consequently, Avant fails to demonstrate that the government improperly rejected test items submitted under contract 40.

Citing the provision in contract 40 that DLIFLC will "work closely with the Contractor to improve the quality of items," Avant contends that "[b]y declining to provide reasonable information about how subjective judgments concerning the interpretation of ambiguous criteria would be made, the Government both breached the implied duty of cooperation and the express coordination duties included in [contract 40]" (app. br. at 42). Avant cites nothing in support of that statement, even though it has the burden to prove contract breaches. *See, e.g., Military Aircraft Parts*, ASBCA No. 60009, 16-1 BCA ¶ 36,388 at 177,401. Nevertheless, we find no such breach. The government

---

[6] In support, Avant cites FAR 22.4(a) (app. br. at 40), which does not apply to this Board. *See* 4 C.F.R. § 22 (Rules of Procedure of the Government Accountability Office Contract Appeals Board).

[7] Avant does not suggest that it seeks $1,110,452.42 in breach damages only for the rejection of the three test items that its expert opined upon (exhibits 2, 3, and 4), nor that those items are a representative sample that demonstrates that the government improperly rejected 6,641 test items. If Avant is suggesting the latter, we reject that suggestion; there is simply too great an analytical gap between such a conclusion and the evidence regarding those three items. *Cf. Universal Yacht Servs., Inc.*, ASBCA No. 53951, 04-2 BCA ¶ 32,648 at 161,578-59 (rejecting expert opinion).

provided a pre-performance orientation session for contract 40, as well as feedback regarding its review of every test item delivered under contract 40. Avant did not review that feedback.

For all these reasons, Avant fails to demonstrate that the government breached contract 40.

## CONCLUSION

We have considered the parties' other arguments, but none of them changes our conclusions, and we need not address them further. ASBCA No. 58903 is sustained, and the termination of contract 15 is converted to one for the convenience of the government. ASBCA Nos. 60143 and 60144 are dismissed as moot. ASBCA No. 60619 is denied.

Dated: 21 August 2017

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

12

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 58903, 60143, 60144, 60619, Appeals of Avant Assessment, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
